O'MELVENY & MYERS LLP
Shannon Lowry Nagle
Jason R. Alderson
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

Attorneys for Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| | : | |
| **2008 Asset Holding Corp.,** | : | **Case No. 09-14264 (AJG)** |
| **2008 Asset Holding - TRS Corp.,** | : | **Case No. 09-14265 (AJG)** |
| **2008 Asset Holding - QRSRE Corp.,** | : | **Case No. 09-14266 (AJG)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------- x

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
## 2008 ASSET HOLDING CORP. AND ITS AFFILIATE DEBTORS

Dated:  October 6, 2009
         New York, New York

# TABLE OF CONTENTS

**Page**

ARTICLE ONE        DEFINITIONS ................................................................................ 1

ARTICLE TWO        CLASSIFICATION OF CLAIMS AND INTERESTS ..................... 10

     2.1      Unclassified Claims (not entitled to vote on the Plan) ........................ 11

     2.2      Classified Claims ................................................................................. 11

ARTICLE THREE        TREATMENT OF CLAIMS AND INTERESTS ............................ 11

     3.1      Unclassified Claims ............................................................................. 11

     3.2      Impaired Classes of Claims and Interests .......................................... 13

     3.3      Special Provision Regarding Unimpaired Claims .............................. 13

ARTICLE FOUR        ACCEPTANCE OR REJECTION OF THE PLAN .......................... 14

     4.1      Impaired Classes of Claims Entitled to Vote ..................................... 14

     4.2      Acceptance by an Impaired Class ....................................................... 14

     4.3      Elimination of Vacant Classes ........................................................... 14

     4.4      Nonconsensual Confirmation ............................................................. 14

ARTICLE FIVE        MEANS FOR IMPLEMENTATION OF THE PLAN ...................... 14

     5.1      Limited Substantive Consolidation of the Debtors for Voting, Confirmation & Distribution is Not Necessary ................................. 14

     5.2      Corporate Dissolution ......................................................................... 14

     5.3      Dissolution and Rights of Creditors' Committee .............................. 15

     5.4      Cancellation of Notes, Instruments, Debentures and Common Stock ................. 15

     5.5      Liquidation Fund ................................................................................. 16

     5.6      Rights, Powers and Duties of the Disbursing Agent .......................... 16

     5.7      Reserve Account ................................................................................. 17

     5.8      Substantial Consummation ................................................................. 17

     5.9      Notice of Effective Date ..................................................................... 17

ARTICLE SIX        PROVISIONS GOVERNING DISTRIBUTIONS ............................ 17

     6.1      Distributions for Claims Allowed as of the Effective Date ................ 17

     6.2      Payment of Convertible Notes Indenture Trustee Fees ...................... 18

     6.3      No Postpetition Interest on Claims ..................................................... 18

     6.4      Distributions by the Disbursing Agent ............................................... 18

     6.5      Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 19

| | 6.6 | Record Date for Distributions | 19 |
|---|---|---|---|
| | 6.7 | Allocation of Plan Distributions Between Principal and Interest | 20 |
| | 6.8 | Means of Cash Payment | 20 |
| | 6.9 | Withholding and Reporting Requirements | 20 |
| | 6.10 | Setoffs | 20 |
| | 6.11 | Surrender of Canceled Notes and Canceled Instruments of Securities | 21 |
| | 6.12 | Lost, Stolen, Mutilated, or Destroyed Debt Securities | 21 |
| ARTICLE SEVEN | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 21 |
| | 7.1 | Assumption of Executory Contracts and Unexpired Leases | 21 |
| | 7.2 | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 22 |
| ARTICLE EIGHT | | PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS | 22 |
| | 8.1 | Resolution of Disputed Claims | 22 |
| | 8.2 | No Distributions Pending Allowance | 22 |
| | 8.3 | Reserves for Disputed Claims | 23 |
| | 8.4 | Excess Reserves | 23 |
| ARTICLE NINE | | CONFIRMATION AND CONSUMMATION OF THE PLAN | 23 |
| | 9.1 | Conditions to Confirmation | 23 |
| | 9.2 | Conditions to Effective Date | 24 |
| | 9.3 | Waiver of Conditions | 24 |
| | 9.4 | Consequences of Non-Occurrence of Effective Date | 24 |
| ARTICLE TEN | | EFFECT OF PLAN CONFIRMATION | 25 |
| | 10.1 | Binding Effect; Plan Binds All Holders of Claims and Interests | 25 |
| | 10.2 | Releases and Related Injunctions | 25 |
| | 10.3 | Exculpation and Limitation of Liability | 26 |
| | 10.4 | Injunction | 26 |
| | 10.5 | Term of Bankruptcy Injunction or Stays | 27 |
| | 10.6 | Termination of Subordination Rights and Settlement of Related Claims | 27 |
| | 10.7 | Preservation of Causes of Action | 27 |
| ARTICLE ELEVEN | | RETENTION OF JURISDICTION | 28 |
| ARTICLE TWELVE | | MISCELLANEOUS PROVISIONS | 30 |
| | 12.1 | Effectuating Documents and Further Transactions | 30 |

12.2    Entry of a Final Decree ........................................................................................ 30

12.3    Nondischarge of the Debtors .............................................................................. 30

12.4    Authority to Act .................................................................................................. 30

12.5    Bar Dates for Administrative Claims ................................................................. 31

12.6    Payment of Statutory Fees .................................................................................. 31

12.7    Amendment or Modification of the Plan ............................................................ 31

12.8    Severability of Plan Provisions.......................................................................... 31

12.9    Successors and Assigns ...................................................................................... 32

12.10  Revocation, Withdrawal, or Non-Consummation ............................................. 32

12.11  Notice.................................................................................................................. 32

12.12  Governing Law ................................................................................................... 33

12.13  Tax Reporting and Compliance .......................................................................... 33

12.14  Schedules ............................................................................................................ 34

12.15  Filing of Additional Documents ........................................................................ 34

12.16  Conflicts.............................................................................................................. 34

12.17  Fees and Expenses .............................................................................................. 34

12.18    Post-Confirmation Reporting.......................................................................... 34

ARTICLE THIRTEEN   CONFIRMATION REQUEST ......................................................... 35

## EXHIBITS

Exhibit A      Assumed Executory Contracts list for 2008 AHC [to be provided]

## INTRODUCTION

2008 Asset Holding Corp. ("2008 AHC"); 2008 Asset Holding -- QRSRE Corp. ("QRS") and 2008 Asset Holding -- TRS Corp. ("TRS") (collectively, the "Debtors") propose the following joint plan of liquidation for the resolution of the outstanding claims against the Debtors. Reference is made to the Disclosure Statement (as that term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, businesses and operations, risk factors, a summary and analysis of this Plan (as that term is defined herein), and certain related matters including, among other things, certain tax matters. Subject to certain restrictions and requirements set forth in section 1127 of title 11 of the United States Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE ONE
## DEFINITIONS

**A.    Defined Terms And Rules Of Interpretation**. Capitalized terms used but not otherwise defined in this Plan shall have the meanings set forth below. Any term that is not otherwise defined herein, but is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1    Administrative Claim** means any Allowed Claim constituting a cost or expense of administration of these Chapter 11 Cases under and in accordance with, as applicable, sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses incurred after the Petition Date of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during these Chapter 11 Cases and (d) any compensation for professional services rendered and reimbursement of expenses incurred to the extent allowed by Final Order.

**1.2    Affiliate Debtor** means TRS and/or QRS.

**1.3    Allowed Claim** means, with reference to any Claim against the Debtors, (a) any Claim against any Debtor that has been listed in its Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed as of the relevant Bar Date or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim (i) as to which no objection has been or is interposed in accordance with <u>Article 8</u> of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the Bankruptcy Court and as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order of the Bankruptcy Court or under <u>Article 8</u> of the Plan; <u>provided</u>, <u>however</u>, that (a) prior to the deadline imposed by this Plan to file objections to a given Claim, no Claim shall be treated as an Allowed Claim to the

extent it is filed in an amount greater than the amount for such Claim listed on the Schedules or asserting a priority higher than the priority listed for such Claim by the Debtors in their Schedules, (b) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" and (c) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date.

**1.4** **Assets** means all assets of the Debtors, of any nature whatsoever, and property of the Estates as defined in section 541 of the Bankruptcy Code, including, without limitation, all Cash, Causes of Action, rights, interests in property, real, personal, tangible and intangible, including all files, books and records of the Estates.

**1.5** **Ballot** means each of the ballot forms distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

**1.6** **Bankruptcy Code** means title 11 of the United States Code, as now in effect and hereafter amended, as applicable to these Chapter 11 Cases.

**1.7** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York, or any other court with jurisdiction over these Chapter 11 Cases.

**1.8** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

**1.9** **Bar Date** means the date(s) fixed by the Bankruptcy Court by which all persons, including governmental units, asserting a Claim against the Debtors must have filed a proof of Claim against the Debtors or be forever barred from asserting such Claim.  For any Claim arising prior to the Petition Date, the Bar Date means September 2, 2009 for non-governmental units, and December 28, 2009 for governmental units.  For other Claims, the Bar Date means the date(s) set forth in Article 3.1, 7.2 and 12.5 of the Plan.

**1.10** **Business Day** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.11** **Cash** means legal tender of the United States of America (and equivalents thereof) held by the Debtors on the Petition Date.

**1.12** **Causes of Action** means, without limitation, any and all claims, causes of action, demands, rights, actions, suits, damages, injuries, remedies, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, unknown, accrued or to accrue, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or under any other theory of law, whether

asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise.

**1.13    Chapter 11 Cases** means the chapter 11 cases filed by the Debtors on the Petition Date in the United States Bankruptcy Court for the Southern District of New York with the following assigned case numbers:  09-14264 (AJG), 09-14265 (AJG), and 09-14266 (AJG).

**1.14    Claim** means a "claim" as defined in section 101(5) of the Bankruptcy Code and, except as otherwise provided in the context, means a claim against the Debtors or the Estates.

**1.15    Claims Objection Deadline** means the last day for Filing objections to Claims which day shall be (i) the later of (a) ten (10) days after the Effective Date or (b) thirty (30) days after the Filing of a proof of claim for, or request for payment of such Claim, or (ii) such other date as the Bankruptcy Court may order.

**1.16    Class** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to section 1122 of the Bankruptcy Code.

**1.17    Cobalt Litigation** means the state court action styled as Cobalt Partners, L.P., et al. v. GSC Capital Corp., GSCP (NJ), L.P. and GSC Group, Inc., Supreme Court of the State of New York for the County of New York, Case No. 602964/07.

**1.18    Cobalt Litigation Claims** means any and all Claims relating to and/or asserted by the plaintiffs only against 2008 AHC (but not against GSC Group, Inc. and GSCP (NJ) L.P.) in the Cobalt Litigation.  The plaintiffs in the Cobalt Litigation seek rescission and/or damages in connection with a private placement purchase of stock in GSC Capital Corp. (n/k/a 2008 AHC) and the alleged breach of a stock offering memorandum and registration rights agreement.

**1.19    Common Stock** means the Common Stock of 2008 AHC that is outstanding immediately prior to the Petition Date, including, without limitation, treasury stock and any other such interests that are authorized to be issued but have not been issued.

**1.20    Confirmation Date**  means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.21    Confirmation Hearing** means the hearing held by the Bankruptcy Court pursuant to sections 105 and 1128 of the Bankruptcy Code to consider confirmation of this Plan pursuant to Bankruptcy Rule 3020(b), as such hearing may be adjourned or continued from time to time.

**1.22    Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.23    Convertible Noteholders** means the Holders of the Convertible Notes Claims.

**1.24    Convertible Noteholders Committee** means the informal committee of Convertible Noteholders that engaged in discussions with the Debtors prior to the Petition Date which consisted of (i) U.S. Bank National Association, Convertible Notes Indenture Trustee (ex-officio member), (ii) Tempo Master Fund LP, (iii) DKR SoundShore Oasis Holdings Fund, Ltd.,

(iv) Glenview Capital Management LLC, (v) Deutsche Bank AG London and (vi) D.E. Shaw Valence Portfolios, L.L.C.

**1.25    Convertible Notes** means the 7.25% Convertible Notes due 2010 issued by 2008 AHC prior to the Petition Date under the Convertible Notes Indenture dated June 11, 2005.

**1.26    Convertible Notes Claims** means any and all Claims, obligations and liabilities (except the Convertible Notes Indenture Trustee Fee Claim) arising from or related to the Convertible Notes and/or Convertible Notes Indenture, including, without limitation, the "Indenture Obligations" (as such term is defined in the Convertible Notes Indenture), which Claims shall be Allowed in the aggregate principal amount of no less than $111,799,760, which consists of principal and interest accrued but unpaid as of the Petition Date pursuant to the Convertible Notes Indenture.

**1.27    Convertible Notes Indenture** means that certain indenture, dated as of July 11, 2005, among 2008 AHC, as issuer, and the Convertible Notes Indenture Trustee, relating to the Convertible Notes (as amended, modified, or supplemented from time to time).

**1.28    Convertible Notes Indenture Trustee** means U.S. Bank National Association, as the indenture trustee under the Convertible Notes Indenture, and its successors and assigns.

**1.29    Convertible Notes Indenture Trustee Fee Claim** means the reasonable, unpaid administrative fees, out-of-pocket costs and expenses, including legal fees, incurred by the Convertible Notes Indenture Trustee through the Effective Date in accordance with the Convertible Note Indenture.

**1.30    Creditors' Committee** means the official committee of unsecured creditors appointed on July 24, 2009 in these Chapter 11 Cases by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code, and the committee of unsecured creditors that will continue in existence post-confirmation in accordance with the terms of this Plan.

**1.31    Creditors' Committee Consent** means the consent of the Creditors' Committee provided verbally or in writing, and shall be deemed to have been obtained if the Debtors or Disbursing Agent provide notice to the Creditors' Committee and no response is received therefrom within three Business Days from the date notice is given by e-mail to the attorneys for the Creditors' Committee.

**1.32    Debtor(s)** means, individually, any of the 2008 Asset Holding Corp., 2008 Asset Holding--QRSE Corp., and 2008 Asset Holding--TRS Corp. and, collectively, all of the above-captioned debtors and debtors-in-possession.

**1.33    Disallowed Claim** means a Claim on any portion thereof that (i) has been disallowed by Final Order, (ii) is scheduled as zero or as contingent, disputed or unliquidated and as to which no proof of Claim or Administrative Claim motion has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, (iii) is not scheduled and as to which no proof of Claim or Administrative Claim motion has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, (iv)

has been withdrawn by agreement of the Debtors and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

**1.34    Disbursing Agent** means GSCP (NJ), L.P., an SEC registered advisor, that, together with certain affiliates, does business as GSC Group.

**1.35    Disclosure Statement** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.36    Disputed** means, with reference to any Administrative Claim or Claim, any such Administrative Claim or Claim (a) to the extent neither an Allowed Claim nor a Disallowed Claim under the Plan or a Final Order nor deemed an Allowed Claim under sections 502, 503 or 1111 of the Bankruptcy Code, (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order or (c) as to which the Debtors or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in a proof of Claim exceeds the amount of the Claim scheduled by the Debtor as not disputed, contingent or unliquidated or to the extent the Claim asserts a priority higher than the priority listed for such Claim by the Debtors in their Schedules.

**1.37    Disputed Claim Amount** means the estimated amount of a Disputed Claim, or, if no estimated amount exists, the amount set forth in the proof of claim relating to such Disputed Claim as the liquidated amount of such Disputed Claim.

**1.38    Distribution Record Date** means the date that is five (5) Business Days before the Confirmation Date, except the Distribution Record Date for the Convertible Noteholders shall be the Effective Date.

**1.39    Effective Date** means a Business Day selected by the Debtors on or after the Confirmation Date, on which the conditions precedent to the effectiveness of the Plan specified in Article 9.2 of the Plan shall have been satisfied or waived as provided in Article 9.3 of the Plan; provided however, if any stay or injunction against enforcement or execution of the Confirmation Order is issued prior to the date that would otherwise be the Effective Date, the Effective Date shall be the first Business Day after all such stays or injunctions are no longer in effect.

**1.40    Entity** means an "entity" as defined in section 101(15) of the Bankruptcy Code.

**1.41    Estate(s)** means, individually, the estate of each of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

**1.42     Excess Cash** means all Cash available for distribution from the Liquidation Fund (on a Pro Rata basis) to Allowed General Unsecured Claims after payment in full of all Allowed Administrative Claims and Tax Claims.

**1.43     Executory Contract** means any executory contract or unexpired lease, subject to section 365 of the Bankruptcy Code, between any Debtor and any other person.

**1.44     Exhibit** means an exhibit annexed to either this Disclosure Statement or as an appendix to the Plan (as such exhibits are amended, modified or otherwise supplemented from time to time).

**1.45     Existing Equity Holders** means each Holder of Common Stock.  Existing Equity Holders and Holders of Cobalt Litigation Claims are classified as Class 3 Claims.

**1.46     Fees Estimate** means (a) a written good faith estimate, to be filed on or before three calendar days before the first date set for the hearing on the confirmation of the Plan (or any subsequent hearing date, if the first date set for the hearing on confirmation of the Plan is adjourned) of the maximum amount of compensation and reimbursement of expenses to be requested for any period prior to the Confirmation Date, including, without limitation, any substantial contribution Claims in the Chapter 11 Cases and for any fees or premiums in addition to normal hourly charges or quoted fees, and (b) a written good faith estimate, to be filed on or before five calendar days before the Effective Date of the maximum amount of compensation and reimbursement of expenses to be requested for any period subsequent to the Confirmation Date but prior to the Effective Date, including, without limitation, any substantial contribution Claims in the Chapter 11 Cases and for any fees or premiums in addition to normal hourly charges or quoted fees.  The Convertible Notes Indenture Trustee shall also provide a Fee Estimate of the Convertible Notes Indenture Trustee Claim in accordance with this Article 1.46.

**1.47     File, Filed,** or **Filing** means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.48     Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

**1.49     Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Rules, may be filed relating to such order shall not prevent such order from being a Final Order. Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order is concerned,

Final Order means such order or judgment which has been entered on the docket of these Chapter 11 cases as to which no stay is in effect.

**1.50  General Unsecured Claim** means any Claim that is not an Administrative Claim, a Tax Claim or a Secured Claim.  For the avoidance of doubt, General Unsecured Claims include but are not limited to Allowed Convertible Notes Claims and Allowed Rejection Claims. General Unsecured Claims shall include, without limitation, any Claim secured by an interest in property of the Estate to the extent the amount of such Claim exceeds the value, as determined by the Bankruptcy Court pursuant to sections 506(a), 553 and/or 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, of the Holder's interest in the Estate's interest in property of the Estate securing such claim.

**1.51  Holder** means a Person or an Entity holding a Claim or Interest.

**1.52  Impaired** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.53  Initial Distribution Date** means the date as determined by the Debtors upon which the initial distributions of property under the Plan will be made to Holders of Allowed Claims, which date shall be as soon as practicable after the Effective Date and no later than forty-five (45) days after the Effective Date, unless otherwise extended with the consent of the Creditors' Committee by order of the Bankruptcy Court.

**1.54  Interest** means the legal, equitable, contractual and other rights of the Holders of any ownership interest in any Debtor existing as of the Petition Date, including, without limitation, the Common Stock, which shall also include the rights of any Person or Entity to purchase or demand the issuance of any of the foregoing and shall include:  (a) conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; (c) options, warrants and put rights; and (d) share-appreciation rights.

**1.55  IRC** means the Internal Revenue Code of 1986, as amended.

**1.56  IRS** means the Internal Revenue Service of the United States of America.

**1.57  Lien** means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind securing payment or performance of a claim or debt.

**1.58  Liquidation Fund** means Cash of the Estates transferred to the Liquidation Fund to make distributions under the Plan by the Disbursing Agent.

**1.59  Local Rules** means the Local Rules of the United States Bankruptcy Court for the Southern District of New York.

**1.60  Mortgage Trusts** means (a) GSC Capital Corp. Mortgage Trust 2006-1 and (b) GSC Capital Corp. Mortgage Trust 2006-2

**1.61** **Person** means any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

**1.62** **Petition Date** means June 30, 2009, the date on which the Debtors filed their petitions for relief commencing these Chapter 11 Cases.

**1.63** **Plan** means this joint chapter 11 plan of liquidation, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

**1.64** **Plan Schedule** means a schedule annexed to either this Plan or as an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

**1.65** **Professional** means (a) any professional employed in these Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise (b) any professional or other Entity seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code, or (c) any professional retained by the Debtors or the Disbursing Agent pursuant to Article 6.4.

**1.66** **Professional Fee(s)** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date (including expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such, but excluding any Convertible Notes Indenture Trustee Claim).

**1.67** **Pro Rata** means with respect to a distribution regarding a particular Class (or several Classes taken as a whole), the proportion that (a) the Allowed Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate amount of all Allowed Claims in such Class (or several Classes taken as a whole), unless this Plan provides otherwise.

**1.68** **QRS** means the Debtor, 2008 Asset Holding -- QRSRE Corp.

**1.69** **Rejection Claim** means an unsecured claim arising from the rejection of a lease or executory contract as described in Article 7 of the Plan.

**1.70** **Related Persons** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity-holders, officers, directors, employees, representatives, advisors, attorneys, agents and professionals, in each case acting in such capacity on or any time after the Petition Date, and any Person claiming by or through any of them; provided, however, that no insurers of the Debtors shall constitute a Related Person. For the avoidance of doubt, GSCP (NJ), L.P., and GSC Group., Inc., are Related Persons of each of the Debtors.

**1.71** **Released Parties** means, collectively, (i) the Debtors or their Estates, (ii) the Convertible Notes Indenture Trustee, (iii) the Creditors' Committee, (iv) Deutsche Bank Securities Inc. as issuer of the (a) Existing Equity Holders' Interests, and (b) Convertible Notes,

(v) the Convertible Noteholders Committee, (vi) GSCP (NJ), L.P., (vii) GSC Group, Inc. and/or GSC Partners, and (viii) the respective Related Persons of and financial advisors, attorneys, accountants, agents, investment bankers, consultants, representatives and other Professionals for each of the foregoing.

**1.72    Reserve Account** means the reserve established by the Disbursing Agent pursuant to Articles 5.7 and 8.4 of the Plan.

**1.73    Schedules** means the schedules of assets and liabilities, and the statements of financial affairs, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.74    Secured Claim** means a Claim that is secured by a valid unavoidable lien on property in which the Estates have an interest, or that is subject to recoupment or set off under section 553 of the Bankruptcy Code to the extent of the value of the Holder's interest in the Estate's interest in such property, or to the extent of the amount subject to recoupment or set off, as determined by the Bankruptcy Court pursuant to section 506(a), 553 and/or 1129(b)(2)(A)(i)(II), as applicable.

**1.75    Subsequent Distribution** means any distribution of property under this Plan to Holders of Allowed Claims in accordance with Article 6.1(c) of this Plan.

**1.76    Subsequent Distribution Date(s)** means that date or dates on which distributions are made pursuant to Article 6.1(c) of this Plan

**1.77    Tax Claims** means a tax-related Claim of a governmental unit entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.78    TRS** means the Debtor, 2008 Asset Holding -- TRS Corp.

**1.79    Unimpaired Claim** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.80    U.S. Trustee** means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the Southern District of New York.

**1.81    Voting Deadline** means November 6, 2009.

**1.82    Voting Record Date** means October 7, 2009.

**1.83    2008 AHC** means the Debtor, 2008 Asset Holding Corp.

**B.    Exhibits and Plan Schedules.**  All Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein.  The Exhibits and Plan Schedules may be inspected in the office of the clerk of the Bankruptcy Court during normal business hours or obtained by written request to counsel to the Debtors.

**C.** **Rules of Interpretation and Computation of Time**. For purposes of this Plan, unless otherwise provided herein:

> (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural;

> (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions;

> (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan;

> (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

> (e) all references in this Plan to sections, articles and schedules are references to sections, articles and schedules of or to this Plan;

> (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan;

> (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan;

> (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules;

> (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to this Plan; and

> (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE TWO
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims and Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims have not been classified as described below.

The following treatment set forth in this <u>Article 2</u> shall be accorded in full and complete satisfaction of all Claims against, and Interests in, the Debtors. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the

description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

| Summary of Classification of Claims and Interests | | | |
|---|---|---|---|
| Class | Claim | Status | Voting Rights |
| 1. | Secured Claims | N/A | N/A |
| 2. | General Unsecured Claims | Impaired | Entitled to Vote |
| 3. | Existing Equity Holders and Cobalt Litigation Claims | Impaired | Deemed to Reject |

**2.1 Unclassified Claims** (not entitled to vote on the Plan)

Administrative Claims and Tax Claims. Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Allowed Administrative Claims and Allowed Tax Claims are conclusively presumed to accept the Plan and the Debtors will not solicit acceptances from such Holders.

**2.2 Classified Claims.**

(i) *Class 1*: Class 1 consists of Secured Claims. The Debtors do not have any Allowed Secured Claims.

(ii) *Class 2*: Class 2 consists of all General Unsecured Claims. Class 2 Claims are entitled to vote on the Plan.

(iii) *Class 3*: Class 3 consists of all Existing Equity Holders and Cobalt Litigation Claims. Pursuant to section 1126(a) of the Bankruptcy Code, Class 3 Claims are deemed to have rejected the Plan and are not entitled to vote on the Plan.

**ARTICLE THREE**
**TREATMENT OF CLAIMS AND INTERESTS**

**3.1 Unclassified Claims**

(a) *Administrative Claims Generally.* Subject to the provisions of sections 330(a), 331 and 503(b) of the Bankruptcy Code, each Holder of an Allowed Administrative Claim shall be paid by the Disbursing Agent, at their election, (i) in full, in Cash, in such amounts as are incurred in the ordinary course of business by the Debtors, or in such amounts as such Administrative Claim is determined to be an Allowed Administrative Claim by the

Bankruptcy Court upon the later of the Effective Date or the date upon which there is a Final Order allowing such Administrative Claim; (ii) upon such other terms as may exist in the ordinary course of such Debtor's business; or (iii) upon such other terms as may be agreed upon in writing between the Holder of such Administrative Claim and the Debtors, in each case in full satisfaction, settlement, discharge and release of, and in exchange for, such Administrative Claim. All outstanding fees payable to the U.S. Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid by the Disbursing Agent no later than thirty (30) days after the Effective Date.

(i) *Professional Fee Claims.* Professionals asserting a Professional Fee Claim (other than substantial contribution Claims) for services rendered before the Effective Date must File and serve on the Debtors and such other entities designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court an application for final allowance of such Claim no later than thirty (30) days after the Effective Date; provided, however, that any Professional who may receive compensation or reimbursement of expenses as an ordinary course Professional may continue to receive such compensation and reimbursement for expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the ordinary course Professionals order (if any). Objections to any Professional Fee Claim must be Filed and served on the Debtors and the requesting party no later than thirty (30) days after the filing of the applicable request for payment of the Professional Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Professional Fee Claims. The Debtors shall pay in full Allowed Professional Fee Claims.

(ii) *Fee Estimate.* Professionals asserting a Professional Fee Claim pursuant to sections 326, 327, 328, 330, 503(b)(2) through (6) and/or 1103 of the Bankruptcy Code shall File a Fee Estimate. The Debtors will be under no obligation to reserve funds sufficient to pay Professional Fee Claims once Allowed if a Fee Estimate is not Filed by such Professional seeking payment, and under no obligation to make distributions on Allowed Professional Fee Claims for which a Fee Estimate is not timely filed.

(iii) *Effect of Failure to Timely File Claims, Requests for Payment or Objections.* Any Holder of a Professional Fee Claim or substantial contribution Claim who does not timely File a Claim, Fee Estimate or request for payment of such Claim is enjoined from proceeding against Debtors, and from receiving any distributions under the Plan. Objections to Professional Fee Claims or substantial contribution Claims must be Filed and served on the requesting party no later than thirty (30) days after the Filing of the request for payment of a Professional Fee Claim or substantial contribution Claim. Objections not Filed within this time shall be deemed waived.

(b) *Tax Claims.* The legal, equitable and contractual rights of the Holders of Tax Claims are unaltered by this Plan. On, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Tax Claim is an Allowed Tax Claim as of the Effective Date or (ii) the date on which such Tax Claim becomes an Allowed Tax Claim, the Debtors, in their sole discretion, shall instruct the Disbursing Agent to pay to each Holder of an Allowed Tax Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Tax Claim (A) Cash equal to the amount of such Allowed Tax Claim; (B) such other

less favorable treatment as to which the applicable Debtor or Disbursing Agent and the Holder of such Allowed Tax Claim shall have agreed upon in writing; or (C) such other treatment such that the Allowed Tax Claim will not be Impaired pursuant to section 1124 of the Bankruptcy Code, including payment in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that Allowed Tax Claims incurred by the applicable Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto in the discretion of the applicable Debtor or Disbursing Agent without further notice to or order of the Bankruptcy Court. The Disbursing Agent may prepay any Allowed Tax Claim at any time after the Effective Date without penalty or charge. Holders of Allowed Tax Claims will not be entitled to receive any payment on account of any penalties arising with respect to, or in connection with, such Claims. Any Claim for any such penalty will be deemed disallowed by confirmation of the Plan.

### 3.2 Impaired Classes of Claims and Interests

(a) *Class 1*: Secured Claims. Class 1 consists of Secured Claims. The Debtors do not believe that they have any Holders of Allowed Secured Claims.

(b) *Class 2: General Unsecured Claims.* On or prior to the Initial Distribution Date, the Disbursing Agent shall distribute a Pro Rata share of Excess Cash to each Holder of an Allowed Claim in Class 2. On or prior to the Subsequent Distribution Date(s), the Disbursing Agent shall distribute a Pro Rata share of any Excess Cash of the Debtors from any source, including, without limitation, Excess Reserves, proceeds from Causes of Action and proceeds from the liquidation of all Assets (if any) of the Debtors, to Holders of Allowed Claims in Class 2 pursuant to Article 6.1(c) of this Plan. Distributions made to Allowed Claims in Class 2 on the Initial Distribution Date and/or the Subsequent Distribution Date(s) (if any), shall be in full satisfaction, settlement, discharge and release of and in exchange for, Allowed Claims in Class 2.

(c) *Class 3: Existing Equity Holders and Cobalt Litigation Claims.* On the Effective Date, each of the Existing Equity Holders and each of the Holders of Cobalt Litigation Claims will not receive a recovery under the Plan and their respective interests shall be deemed cancelled, null and void and of no force and effect without further act or action under any applicable law, regulation, order, rule or agreement.

Pursuant to section 510(b) of the Bankruptcy Code, claims for damages arising from the purchase or sale of a security are subordinated, except that if such security is common stock, such claim has the same priority as common stock. Accordingly, the Cobalt Litigation Claims are subordinated to general unsecured creditors and classified with Existing Equity Holders in Class 3.

### 3.3 Special Provision Regarding Unimpaired Claims

Except as otherwise provided in this Plan, nothing shall affect the Debtors' or Disbursing Agent's rights, remedies and defenses, both legal and equitable, with respect to any Unimpaired Claims or Claims and actions arising from or under any Executory Contract rejected by the Debtors, including, but not limited to, all rights with respect to legal and equitable defenses, including setoff or recoupment.

# ARTICLE FOUR
## ACCEPTANCE OR REJECTION OF THE PLAN

### 4.1 Impaired Classes of Claims Entitled to Vote

Holders of Claims in Class 2 are entitled to vote to accept or reject this Plan.

### 4.2 Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### 4.3 Elimination of Vacant Classes

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 4.4 Nonconsensual Confirmation

If any Impaired Class fails to accept the Plan, the Debtors' intend to request that the Bankruptcy Court confirm the Plan as a cramdown Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to such Class.

# ARTICLE FIVE
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1 Limited Substantive Consolidation of the Debtors for Voting, Confirmation & Distribution is Not Necessary.

All Impaired Claims and Interests of the Debtors are located at 2008 AHC, and not at TRS or QRS. Therefore, the substantive consolidation of the Debtors for voting, confirmation, distribution purposes is not necessary. The IRS is the only creditor of TRS and its Claims are unimpaired.

### 5.2 Corporate Dissolution

Immediately after the Effective Date, the president of the Debtors shall be authorized to take, in his sole discretion, all actions necessary to dissolve the Debtors under applicable laws, including paying all reasonable fees and expenses in connection with such dissolution.

### 5.3 Dissolution and Rights of Creditors' Committee

(a)  *Dissolution*.  The Creditors' Committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code shall be dissolved on the date that is 18 months subsequent to the Effective Date unless extended by the Creditors' Committee with the consent of the Debtors (which will not be unreasonably withheld).

Following the date of entry of the Confirmation Order, the U.S. Trustee shall not have responsibility for or oversight of the Creditors' Committee, including any modifications to the membership of the Creditors' Committee.  Post-confirmation, the Creditors' Committee shall have the right to modify the composition of the committee including, without limitation, the right to replace a member of the Creditors' Committee that resigns.

(b)  *Rights*.  Subsequent to the Effective Date, the rights of the Creditors' Committee shall include, without limitation, the right to (a) contest any action taken by the Disbursing Agent or the Debtors without Creditors' Committee Consent, and (b) take any other action that is in the reasonable best interests of the Holders of General Unsecured Claims including actions to enforce the provisions of this Plan.

### 5.4 Cancellation of Notes, Instruments, Debentures and Common Stock

On the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, (i) the Convertible Notes and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of a Debtor shall be cancelled and extinguished, (ii) the obligations of the Debtors under any agreements, documents, indentures or certificates of designation governing the Convertible Notes and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of a Debtor that are Impaired under this Plan shall be, and are hereby, discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Disbursing Agent or by any other Person, and (iii) the Common Stock shall be canceled (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Common Stock) without any conversion thereof or distribution with respect thereto. Notwithstanding the foregoing or any other contrary term or provision provided in this Plan, the Convertible Notes Indenture shall continue in effect solely for the purposes of: (i) maintaining all of the protections the Convertible Notes Indenture Trustee enjoys as against the Convertible Noteholders to receive distributions under this Plan, including its lien rights with respect to any Plan distributions; and (ii) allowing and preserving the rights of the Convertible Notes Indenture Trustee to make distributions in satisfaction of Allowed Convertible Notes Claims, but in all cases subject to the terms and conditions of the Convertible Notes Indenture.  As of the Effective Date, the Convertible Notes shall be surrendered to the Convertible Notes Indenture Trustee in accordance with the terms of the Convertible Notes Indenture.  All surrendered and canceled Convertible Notes held by the Convertible Notes Indenture Trustee shall be disposed of in accordance with the applicable terms and conditions of the Convertible Notes Indenture.

### 5.5    Liquidation Fund

The Plan is to be implemented consistent with section 1123 of the Bankruptcy Code. On the Effective Date or as soon thereafter as practicable, all Assets of the Estates will be transferred to the Liquidation Fund to pay all amounts due under the Plan, to be paid by the Disbursing Agent in order of priority as set forth herein.

### 5.6    Rights, Powers and Duties of the Disbursing Agent

Subsequent to the Effective Date, except as otherwise provided in this Plan, the following rights and powers shall be exercisable exclusively by the Disbursing Agent on behalf of the Debtors after consultation with the Creditors' Committee and shall constitute duties of the Disbursing Agent subject to Article 10.7 of this Plan:

(a)    liquidate the Assets (if any) of the Debtors;

(b)    calculate and paying all Holders of Allowed Claims in accordance with the terms of the Plan;

(c)    on or prior to the Initial Distribution Date, make an initial distribution to Holders of Allowed Claims pursuant to Article 6.1(b) of this Plan;

(d)    on the Subsequent Distribution Date, make additional distributions to Holders of Allowed Claims pursuant to Article 6.1(c) of this Plan;

(e)    object to Claims or Interests filed against the Debtors when necessary except to the extent such Claims or Interests have previously been Allowed by a Final Order or this Plan;

(f)    commence Causes of Action on behalf of the Debtors with the Creditors' Committee Consent;

(g)    hold all Assets (if any) of the Debtors in trust for the benefit of Holders of Claims;

(h)    exercise its powers and perform its duties for the benefit of Holders of Claims using the same degree of care and skill in their exercise and performance as a reasonable prudent man would exercise or use under the circumstances in the conduct of his own affairs;

(i)    may invest any Cash, including, but not limited to, Cash held in any Reserve Account, in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, or (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof.

(j)    maintain books and records with respect to all Assets, including, but not limited to, any Cash or Causes of Action, held in the Liquidation Fund or by the Debtors, and

providing the Creditors' Committee with a quarterly report (in writing) summarizing such books and records, and the activities of the Disbursing Agent during the reporting period, including, without limitation, collection and disbursement activities; and

        (k)     close the Chapter 11 Cases of the Debtors;

**5.7     Reserve Account**

        Unless otherwise stated in the Confirmation Order, on the Effective Date or as soon thereafter as practicable, after consultation with the Debtors and the Creditors' Committee, the Disbursing Agent shall establish an interest-bearing Reserve Account from the proceeds of the Liquidation Fund for such estimated amounts as may be needed to, *inter alia*, pay the costs and expenses of winding down the Estates' affairs including, but not limited to, the retention of Professionals pursuant to <u>Article 6.4</u> and expenses relating to the prosecution and resolution of Rejection Claims or Disputed Claims (if any).

**5.8     Substantial Consummation**

        Substantial consummation of this Plan as defined by section 1101(2) of the Bankruptcy Code shall not be deemed to occur, the Chapter 11 Cases shall remain open and shall not be deemed fully administered, and no Final Decree closing the Chapter 11 Cases shall be entered pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, until the Effective Date, at the earliest.

**5.9     Notice of Effective Date**

        On the Effective Date, the Debtors shall File notice that the Effective Date has occurred and provide such notice to the Convertible Notes Indenture Trustee by e-mail.

**ARTICLE SIX**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**6.1     Distributions for Claims Allowed as of the Effective Date**

        (a)     *Distributions Generally.* Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions from the Liquidation Fund to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made pursuant to <u>Article 8</u> of this Plan. No payments or other distributions shall be made on account of any Claim to the extent it is not an Allowed Claim.

(b)     *Initial Distribution.*  On or prior to the Initial Distribution Date, all Excess Cash of the Debtors or the Liquidation Fund shall be distributed Pro Rata by the Disbursing Agent to Holders of Allowed Claims.

(c)     *Subsequent Distributions.*  Subsequent to the Initial Distribution Date, any Cash from any source of the Debtors or the Liquidation Fund, including, without limitation, Excess Cash, Excess Reserves, proceeds from Causes of Action and all proceeds of the liquidation of all Assets (if any) of the Debtors, shall be distributed Pro Rata by the Disbursing Agent to Holders of Allowed Claims twice annually (such Subsequent Distribution Dates shall occur each year on December 15th and June 15th or such other date established by the Disbursing Agent with the Creditors' Committee Consent), subject to the Reserve Account pursuant to Articles 5.7 and 6.4 of this Plan, expenses pursuant to Article 12.17 of this Plan and reserves pursuant to Article 8.3 of this Plan.

## 6.2     Payment of Convertible Notes Indenture Trustee Fees

The Disbursing Agent shall pay the Convertible Notes Indenture Trustee Fee Claim in Cash on or as soon as practicable after the Effective Date but in any event, no later than the Initial Distribution Date.  The Convertible Notes Indenture Trustee shall also be entitled to payment of reasonable fees and expenses, including legal fees, incurred after the Effective Date in connection with the implementation of this Plan.  The Convertible Notes Indenture Trustee shall file a Fee Estimate on or before five calendar days before the Effective Date.  The Bankruptcy Court will retain jurisdiction to determine the reasonableness of any such fees.

## 6.3     No Postpetition Interest on Claims

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## 6.4     Distributions by the Disbursing Agent

Other than as specifically set forth below, the Disbursing Agent shall make all distributions required to be distributed under this Plan from the Liquidation Fund.  Distributions on account of Convertible Notes Claims shall be made to the Convertible Notes Indenture Trustee.  The Debtors or the Disbursing Agent, if needed, may employ or contract with other entities to assist in or make the distributions required by this Plan including, but not limited to, Professionals (including Professionals retained by the Debtors prior to the Effective Date) to assist the Disbursing Agent in the distribution of Assets from the Liquidation Fund without prior Bankruptcy Court approval. The Committee may also employ or contract with other entities to assist it in its activities subsequent to the Confirmation Date (including Professionals retained by the Committee prior to the Effective Date and subject to Article 12.17 of this Plan).  The reasonable and necessary fees and actual and necessary expenses of such Professionals for the Disbursing Agent and the Committee shall be paid from the Reserve Account upon each monthly submission of a fee statement to the Disbursing Agent and the Committee.  The Disbursing Agent and/or the Committee shall have fifteen (15) days after the delivery of a fee statement to

give notice of an objection to the fee statement of a Professional seeking compensation and/or reimbursement under this Article 6.4. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved for fifteen (15) days after it is delivered may be submitted to the Bankruptcy Court for resolution. The uncontested portion of each Article 6.4 fee statement shall be paid within thirty (30) days after its delivery to the Disbursing Agent and the Committee.

For purposes of making distributions on account of Allowed Claims under the terms and conditions of this Plan, the Disbursing Agent shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code.

### 6.5 Delivery of Distributions and Undeliverable or Unclaimed Distributions

(a) *Delivery of Distributions in General.* Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtors' records unless such addresses are superseded by proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001.

(b) *Undeliverable and Unclaimed Distributions.*

(i) *Holding of Undeliverable and Unclaimed Distributions.* If the distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address.

(ii) *After Distributions Become Deliverable.* The Disbursing Agent shall make all distributions that have become deliverable or have been claimed since the Initial Distribution Date as soon as practicable after such distribution has become deliverable or has been claimed.

(iii) *Failure to Claim Undeliverable Distributions.* Any Holder of an Allowed Claim (or any successor or assignee or other Person or Entity claiming by, through or on behalf of such Holder) that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution within six months after the later of the Effective Date or the date such distribution is due shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors or their Estates. In such cases, any Cash for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of the Estates free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Any such Cash shall become part of the Liquidation Fund and distributed in accordance with the provisions of this Plan. Nothing contained in this Plan shall require the Debtors or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

### 6.6 Record Date for Distributions

The Disbursing Agent or the Debtors will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim (except Convertible Notes Claims) that occurs after the close of business on the Distribution Record Date and any

Convertible Notes Claim that occurs after the Effective Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices and other documents only to those Holders of Allowed Claims (except Convertible Notes Claims) who are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date, and, with respect to Convertible Notes Claims, or participants therein, after the Effective Date. The Disbursing Agent or the Debtors shall be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the official Claims register, or their books and records, as of the close of business on the Distribution Record Date.

### 6.7    Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### 6.8    Means of Cash Payment

Payments of Cash made pursuant to this Plan shall be made, at the option and in the sole discretion of the Disbursing Agent or the Debtors, by (a) checks drawn on, or (b) wire transfers from, a domestic bank selected by the Debtors. Cash payments to foreign creditors may be made, at the option of the Disbursing Agent or the Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### 6.9    Withholding and Reporting Requirements

In connection with this Plan and all distributions hereunder, the Disbursing Agent or the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent or the Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. All persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of this Plan to the contrary, (i) each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and (ii) no distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Disbursing Agent or the Debtors for the payment and satisfaction of such tax obligations. Any Cash and/or other consideration or property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Article 6.5 of this Plan.

### 6.10    Setoffs

The Disbursing Agent or the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off against

(i) any Claim, (ii) the payments or other distributions to be made pursuant to this Plan in respect of such Claim or (iii) claims of any nature whatsoever that the Debtors or Disbursing Agent may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Disbursing Agent or the Debtors of any such claim that the Debtors or Disbursing Agent may have against such Holder.

### 6.11 Surrender of Canceled Notes and Canceled Instruments of Securities

On or as soon as practicable after the Effective Date, the Convertible Notes Indenture Trustee shall coordinate with the Depository Trust Company to surrender and cancel the original global note, and no further surrender or cancellation of the Convertible Notes shall be required.

### 6.12 Lost, Stolen, Mutilated, or Destroyed Debt Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim evidenced by a security or note that has been lost, stolen, mutilated or destroyed shall, in lieu of tendering such security or note to the extent required by this Plan, deliver to the Debtors or Disbursing Agent: (x) evidence reasonably satisfactory to the Debtors or Disbursing Agent of such loss, theft, mutilation or destruction; and (y) such security or indemnity as may be required by the Debtors or Disbursing Agent to hold such party harmless from any damages, liabilities or costs incurred in treating such individual as a Holder of an Allowed Claim. Upon compliance with this Article 6.12 as determined by the Debtors or Disbursing Agent by a Holder of a Claim evidenced by a security or note, such Holder shall, for all purposes under this Plan, be deemed to have surrendered such security or note to the Debtors or Disbursing Agent.

## ARTICLE SEVEN
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1 Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those Executory Contracts that (i) have been assumed by order of the Bankruptcy Court, (ii) are the subject of a motion to assume pending on the Effective Date, (iii) are identified on Exhibit A hereto (which Exhibit A and may be amended by the Debtors to add or remove Executory Contracts by filing with the Bankruptcy Court an amended Exhibit A and serving it on the affected contract parties at any time on or prior to five (5) days prior to the deadline set by the Bankruptcy Court for Filing objections to confirmation of the Plan) or (iv) are rejected pursuant to the terms of this Plan. Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 7.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases

All Rejection Claims with respect to Claims arising from or in connection with the rejection of Executory Contracts, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court approving such rejection or within thirty (30) days after the date of entry of the Confirmation Order. Any Rejection Claims not filed within such time will be forever barred from assertion against the Debtors or their Estates or property unless otherwise ordered by the Bankruptcy Court or provided for in this Plan.

## ARTICLE EIGHT
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

### 8.1    Resolution of Disputed Claims

(a)    *Rejection Claims.* Holders of Rejection Claims must file proofs of Claims on or before the Bar Date. No later than the Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Debtors or Disbursing Agent, as the case may be, may file objections to such Claims with the Bankruptcy Court and serve such objections upon the Holders of such Claims to which objections are made. Nothing contained herein, however, shall limit the Debtors' or Disbursing Agent's right to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Debtors or the Disbursing Agent shall be authorized to, and shall, resolve all Rejection Claims by withdrawing or settling such objections thereto, or by litigating to Final Order in the Bankruptcy Court, the validity, nature, and/or amount thereof.

(b)    *All Other Claims.* The amount set forth in the Schedules shall constitute the amount of the Allowed Claim of any creditor that did not timely and properly File a proof of Claim with the Bankruptcy Court by the Bar Date. If the Claim is a Disputed Claim, the Debtors will attempt to resolve any such disputes consensually or through judicial or non-judicial means outside the Bankruptcy Court (and no further Bankruptcy Court order shall be required in connection with such resolutions). Nevertheless, the Debtors may, in their discretion, file with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections will be litigated to Final Order; provided, however, that the Debtors may compromise and settle, withdraw or resolve by any other method, any objection to Claims without further order of the Bankruptcy Court. Any objections to Disputed Claims will be Filed, if necessary, by the Claims Objection Deadline.

### 8.2    No Distributions Pending Allowance

Notwithstanding any other provision of this Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim, except if there is any dispute as to any portion of the Convertible Notes Claim filed by the Convertible Notes Indenture Trustee, distributions shall be made on such claim as part of the

distributions made on the Initial Distribution Date and, if any, Subsequent Distribution Date(s), based on an Allowed Claim of $111,790,760 as set forth in this Plan, until the dispute regarding such claim is resolved.

### 8.3    Reserves for Disputed Claims

Except to the extent the Bankruptcy Court shall determine that a lesser amount is adequate, the Debtors or the Disbursing Agent shall deposit in the Reserve Account Cash equal to the distributions that would have been made to Holders of Disputed Claims in such Class or category if such Claims were Allowed Claims.

All interest and earnings on funds deposited in the Reserve Account shall be held in trust in the Reserve Account and shall be distributed only in the manner described in the Plan.

At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the distributions reserved for such Disputed Claim or such portion (including interest) shall be released from the Reserve Account and distributed on the Initial Distribution Date or Subsequent Distribution Date(s) (or such other date as determined by the Disbursing Agent in its sole discretion but subject to Article 8.2 of this Plan) by the Disbursing Agent to the Holder of such Allowed Claim, net of any taxes or other applicable charges required to be paid by the Disbursing Agent in respect thereof. At such time as all or any portion of any Disputed Claim is determined not to be an Allowed Claim, the distribution reserved for such Disputed Claim or such portion (including interest) shall be released from the Reserve Account and shall be held by the Disbursing Agent as an excess reserve ("Excess Reserve(s)").

### 8.4    Excess Reserves

(a)    All Excess Reserves arising from the Reserve Account shall be transferred by Disbursing Agent to the Liquidation Fund, and shall thereafter be distributed in accordance with the terms of this Plan.

(b)    Prior to the Initial Distribution Date, the Debtors, in consultation with the Creditors' Committee, shall reserve funds from the distribution to be made on the Initial Distribution Date to provide for future distributions on Disputed Claims, Professional Fees (accruing prior and subsequent to the Effective Date) and other expenses to be paid from the funds of the Debtors' Estates.

## ARTICLE NINE
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 9.1    Conditions to Confirmation

It shall be a condition precedent to confirmation of this Plan that the Bankruptcy Court shall have entered a Confirmation Order reasonably acceptable in form and substance to the Debtors.

**9.2    Conditions to Effective Date**

Each of the following is a condition precedent to the occurrence of the Effective Date:

(a)    The Effective Date shall have occurred on or before December 15, 2009.

(b)    The Confirmation Order confirming this Plan, as such Plan may have been amended or modified, in form and substance reasonably satisfactory to the Debtors shall have been entered and docketed by the Bankruptcy Court, and such order shall have become a Final Order and shall provide that:

(i)    the Debtors or the Disbursing Agent are authorized to take all actions necessary or appropriate to enter into, implement, and consummate (as applicable) the contracts, instruments, releases, leases, indentures, and other agreements or documents contemplated by or described in this Plan;

(ii)    the provisions of the Confirmation Order are non-severable and mutually dependent;

(iii)    the Debtors and their respective Related Persons shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, section 1125 of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

(c)    All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required under this Plan or the Confirmation Order, filed with the applicable governmental authorities in accordance with applicable laws.

**9.3    Waiver of Conditions**

Each of the conditions set forth in Article 9.2 of this Plan may be waived in whole or in part by the Debtors or Disbursing Agent, upon Creditors' Committee Consent, without notice to other parties in interest or notice to or order of the Bankruptcy Court and without a hearing. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtors or Disbursing Agent regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of a Debtor or Disbursing Agent to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

**9.4    Consequences of Non-Occurrence of Effective Date**

If the Effective Date does not occur within 30 days after the Confirmation Date, or by such later date, after notice and hearing, as is proposed by the Debtors given in writing or on the record in these Chapter 11 Cases, then upon motion by the Debtors or the Creditors' Committee and upon notice to such parties in interest as the Bankruptcy Court may direct, the

Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if the Effective Date occurs before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Article 9.4, (a) this Plan shall be null and void in all respects; (b) any settlement of Claims provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) the time within which the Debtors may assume, assume and assign or reject all executory contracts and unexpired leases shall be extended for a period of sixty (60) days after the date the Confirmation Order is vacated; provided that the Debtors retain their rights to seek further extensions of such deadline in accordance with, and subject to, section 365 of the Bankruptcy Code.

## ARTICLE TEN
## EFFECT OF PLAN CONFIRMATION

### 10.1    Binding Effect; Plan Binds All Holders of Claims and Interests

On the Effective Date, and effective as of the Effective Date, this Plan shall, and shall be deemed to, be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in any Debtor and their respective successors and assigns, regardless of whether any such Holder failed to vote to accept or reject this Plan or affirmatively voted to reject this Plan.

### 10.2 Releases and Related Injunctions

(a) *Releases by the Debtors.* On the Effective Date, the Debtors, in their individual capacities and as debtors in possession, and the Estates release all of the Released Parties, and their respective Professionals and property, from any and all Claims (including Causes of Action) and potential Claims, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or thereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Confirmation Date, in any way relating to the Chapter 11 Cases or the Plan, including, but not limited to, the negotiation, solicitation, confirmation and consummation of the Plan; provided, however, that nothing shall release (A) any person from any claims, obligations, rights Causes of Action, or liabilities based upon any act or omission in connection with, relating to, or arising out of, the (i) Chapter 11 Cases, (ii) solicitation of acceptances of the Plan, (iii) pursuit of confirmation of the Plan, (iv) consummation of the Plan, (v) administration of the Plan, or (vi) property to be distributed under the Plan, if such act or omission related to (i) through (vi) arises out of such person's gross negligence or willful misconduct or to the extent applicable, such person's breach of fiduciary duty, and (B) any Released Parties and their Professionals and property with respect to Causes of Action related to transactions, acts and omissions unrelated to the Debtors either pre- or postpetition, in their individual capacities and as debtors in possession, and the Estates or unrelated to the Chapter 11 cases.

(b) *Third Party Release.* Each Person who (i) is entitled to receive a distribution under the Plan or pursuant to the Plan (whether or not a distribution has been made) or (ii) is a member of a Class that votes to accept this Plan (or is deemed to accept this Plan), whether or not such member has voted to accept the Plan, shall be deemed a "Releasing Party." By virtue of Bankruptcy Code sections 1126(c) and 1141(a), each Releasing Party shall be deemed to have released for itself and its respective Professionals, in each case in their capacity as such, any and all Claims and Causes of Action against the Released Parties (as applicable), and their respective Professionals and their respective property, arising prior to the Effective Date. Nothing in the previous sentence shall be deemed to release (AA) the Debtors, in their individual capacities and as debtors in possession, and the Estates from liability for (i) Claims properly and timely filed before the applicable Bar Dates, including the Administrative Claims Bar Date, and (ii) Claims scheduled by the Debtors that are not contingent, disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtors may object to the allowance of any Claim on any ground; and (BB) any Released Parties, their Professionals and their respective property with respect to Causes of Action related to transactions, acts and omissions unrelated to the Debtors either pre- or postpetition, in their individual capacities and as debtors in possession, and the Estates or unrelated to the Chapter 11 Cases.

Each party to which this section of the Plan applies shall be deemed to have granted the releases set forth herein notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation.

### 10.3 Exculpation and Limitation of Liability

Pursuant to section 1125(e) of the Bankruptcy Code, the Released Parties, and their respective Professionals (collectively, the "Plan Participants"), will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Chapter 11 Cases including, but not limited to the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit of Causes of Action, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that any Plan Participant could incur liability as a result of any such act or omission to the extent that such act or omission constitutes fraud, gross negligence or willful misconduct or willful violation of federal or state securities laws or the IRC.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any Plan Participant, whether directly, derivatively, on account of or respecting any claim, debt, right, or Cause of Action based in whole or in part upon any Exculpated Conduct. Any Plan Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

### 10.4 Injunction

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, in their individual capacities and as debtors in possession, and/or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Released Parties, or any of their respective Professionals Persons or any of their respective property with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Released Parties, or any of their Professionals or any of their respective property with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Released Parties, or any of their respective Professionals or any of their respective property with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Released Parties or any of their respective Related Persons or any of their property with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this section shall prohibit the Holder of a timely-filed Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the claimant of any of the obligations of the Debtors under this Plan.

### 10.5 Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, this Plan or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of (i) the entry of the Final Decree, or (ii) dissolution of the Debtors.

### 10.6 Termination of Subordination Rights and Settlement of Related Claims

To the extent applicable, the classification and manner of satisfying all Claims and Interests under this Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to this Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined. Accordingly, distributions pursuant to this Plan to Holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights; provided, however, that nothing contained herein shall preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered under or in connection with this Plan.

### 10.7 Preservation of Causes of Action

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any Claims, rights or Causes of Action that the Debtors may have under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives and (ii) the turnover of any property of the Debtors' Estates. The Disbursing Agent, with the Creditor's Committee Consent, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights and Causes of Action without Bankruptcy Court approval, and all proceeds of such actions shall be transferred to the Liquidation Fund, provided however, that the Disbursing Agent shall not be required to pre-pay, advance or front any fees and/or expenses on behalf of the Estates in connection with or related to carrying out any of the Disbursing Agent's rights, duties and obligations under this Plan, including but not limited to all such rights, duties and obligations under Article 5.6 and this Article 10.7; provided however, that the Creditors' Committee may with the consent of the Disbursing Agent, which consent shall not be unreasonably withheld, institute, prosecute, abandon, settle or compromise any and all such Claims, rights and Causes of Action under this Article 10.7 in the event the Debtors and/or Disbursing Agent decline to do so.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or

equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.

## ARTICLE ELEVEN
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction over all matters arising in, arising under, and/or related to, these Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)     Resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(c)     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(d)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(e)     Resolve disputes arising from the Creditors' Committee asserting its rights under Articles 5.3(b) and 5.6 of this Plan;

(f)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, including, without limitation, any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(h)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement,

the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 327, 330, 331, 363, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code;

(j)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(k)     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(m)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement, or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

(o)     Hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

(p)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(q)     To enter a Final Decree closing these Chapter 11 Cases.

Prior to the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters over which it may exercise jurisdiction pursuant to 28 U.S.C. § 1334.

## ARTICLE TWELVE
## MISCELLANEOUS PROVISIONS

### 12.1     Effectuating Documents and Further Transactions

Each of the Debtors or the Disbursing Agent is authorized to execute, deliver, file or record such contracts, instruments, releases, consents, certificates, resolutions, programs and other agreements and/or documents and take such acts and actions as may be reasonable, necessary or appropriate to effectuate, implement, consummate and/or further evidence the terms

and conditions of this Plan, any notes or securities issued pursuant to this Plan, and any transactions described in or contemplated by this Plan.

## 12.2    Entry of a Final Decree

Promptly following the completion of all distributions contemplated by this Plan, the Debtors or Disbursing Agent will file a motion with the Bankruptcy Court to obtain the entry of a Final Decree.

## 12.3    Nondischarge of the Debtors

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Claims. However, no Person holding a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan. As of the Confirmation Date, all Persons are precluded from asserting against any property that is to be distributed under this Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction or other activity that occurred before the Confirmation Date except as expressly provided in this Plan or the Confirmation Order.

## 12.4    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval (as applicable) of the stockholders, security holders, officers, directors, partners, managers, members or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable law of the states in which the Debtors are formed, without any requirement of further vote, consent, approval, authorization or other action by such stockholders, security holders, officers, directors, partners, managers, members or other owners of such entities or notice to, order of, or hearing before the Bankruptcy Court.

## 12.5    Bar Dates for Administrative Claims

To the extent necessary, the Confirmation Order will establish a Bar Date (expected to be 10 days after the Confirmation Date) for filing Administrative Claims (the "Administrative Claims Bar Date"). Holders of alleged Administrative Claims not paid prior to the Confirmation Date shall File motions requesting payment of such Claims on or before such Administrative Claims Bar Date or forever be barred from doing so (unless such alleged Administrative Claim is incurred in the ordinary course of business by the Debtors and is not yet past-due, in which case the applicable Administrative Claims Bar Date shall be thirty (30) days after such due date or as otherwise ordered by the Bankruptcy Court). The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtors or the Disbursing Agent shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and File

objections to such Administrative Claims, if necessary, and the Bankruptcy Court shall hear and determine the amount of such Administrative Claims.

### 12.6 Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Disbursing Agent in accordance therewith until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

### 12.7 Amendment or Modification of the Plan

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### 12.8 Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.9 Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtors. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

### 12.10 Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw this Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans of liquidation. If the Debtors revoke or withdraw this Plan as to any or all of the Debtors, or if confirmation or

consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors, except as otherwise provided by the Debtors, (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person or Entity, (ii) prejudice in any manner the rights of such Debtors or any other Person or Entity or (iii) constitute an admission of any sort by the Debtors or any other Person or Entity.

### 12.11  Notice

All notices, requests and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to any Debtor:

2008 Asset Holding Corp.
888 Seventh Avenue 26th Floor
New York, New York  10019
Attention:  David L. Goret

2008 Asset Holding Corp.
c/o Institutional Credit Partners, LLC
360 Madison Avenue, 10th Floor
New York, NY 10017
Attention: Edward S. Steffelin

with a copy (which shall not constitute notice hereunder), to:

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
Attention: Shannon Lowry Nagle
Tel:  (212) 326-2000
Fax: (212) 326-2061

If to the Creditors' Committee:

U.S. Bank National Association
c/o James E. Murphy, Vice President
100 Wall Street, Suite 1600
New York, NY 10005
Tel: (212) 361-6174
Email:  james.murphy3@usbank.com

U.S. Bank National Association
c/o Brian J. Klein, Esq.
Clark T. Whitmore, Esq.
Kesha Tanabe, Esq.
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140

with a copy (which shall
not constitute notice
hereunder), to:

Hogan & Hartson LLP
875 Third Avenue
New York, New York 10022
Attention: Ira S. Greene
Tel: (212) 918-3000
Fax: (212) 918-3100
Email: isgreene@hhlaw.com

### 12.12   Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

### 12.13   Tax Reporting and Compliance

The Disbursing Agent is hereby authorized, on behalf of each of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 12.14   Schedules

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

### 12.15   Filing of Additional Documents

On or before substantial consummation of this Plan, the Debtors shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 12.16   Conflicts

In the event that a provision of the Disclosure Statement conflicts with a provision of this Plan, the terms of this Plan shall govern and control to the extent of such conflict.

### 12.17 Fees and Expenses

From and after the Effective Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including those fees and expenses incurred in connection with the implementation and consummation of this Plan, provided, however, that management fees with respect to GSCP (NJ), L.P. shall not exceed $7,000 per month for a period not to exceed the date that is the earlier or (i) the completion of distributions under the Plan or (ii) eighteen (18) months following the Petition Date. From and after the Effective Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals retained by the Creditors' Committee pursuant to section 1103 of the Bankruptcy Code that accrue subsequent to the Effective Date, provided, however, that such reasonable fees and expenses shall not exceed, in aggregate, $30,000.00. If such fees and expenses exceed $30,000.00 and the Creditors' Committee and the Debtors do not consent to the payment of such excess fees and expenses, the Professionals seeking payment shall obtain Bankruptcy Court approval for such excess amounts.

### 12.18 Post-Confirmation Reporting

The Disbursing Agent shall file reports of their respective activities and financial affairs with the Bankruptcy Court on a quarterly basis, within thirty (30) days after the conclusion of such period. Any such reports shall be prepared substantially consistent with (both in terms and format) the applicable Bankruptcy Court and U.S. Trustee guidelines for such matters.

# ARTICLE THIRTEEN
## CONFIRMATION REQUEST

The Debtors hereby request confirmation of this Plan.


Dated: October 6, 2009
      New York, New York

Respectfully submitted,

2008 ASSET HOLDING CORP.
2008 ASSET HOLDING -- QRSRE CORP.
2008 ASSET HOLDING -- TRS - CORP.


By: /s/  Edward Steffelin_____

Edward Steffelin
Title: President